IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CT-3320-D

**Kenneth Gibson**,

                Plaintiff,

v.

**State of North Carolina,** et. al,

                Defendant.

**Order &
Memorandum & Recommendation**

      Plaintiff Kenneth Gibson alleges that the staff at two North Carolina correctional institutions have violated his rights under the constitution and laws of the United States during the course of his incarceration. He names the State of North Carolina, Central Prison, Nash Correctional Institution ("CI"), and several staff members from both facilities as defendants in both their official and individual capacities. D.E. 1 at 1. He seeks injunctive relief only.

      Initially, he claims that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment through the provision of inadequate medical care and the use of excessive force against him. Next, the Defendants violated his Fourteenth Amendment right to due process, Gibson claims, by how they operate their grievance and inmate discipline processes. Then, Gibson alleges that prison staff retaliated against him for filing lawsuits against his prison medical providers by providing him with poor medical care. Finally, he makes a passing reference to a claim under the Americans with Disabilities Act. The Court referred this matter to the undersigned magistrate judge for a preliminary review under 28 U.S.C. § 1915A.

      There are a number of other motions also before the court. In early December 2016, Gibson filed a document that the court construes as a motion to compel the Defendants to

produce items relevant to Gibson's claims, a request for an injunction to prohibit retaliatory conduct, and a supplement to the Complaint. D.E. 4. Later that same month, Gibson filed another document that the court construes as motion to amend the Complaint to add additional factual allegations and an additional defendant. D.E. 9.

After reviewing the various documents and pleadings, the court grants Gibson's motions to supplement and amend his complaint and denies his motion for discovery. Also, the undersigned recommends that the district court deny the motion for injunctive relief. Finally, some, but not all, of Gibson's claims will be allowed to proceed.

### I. Background

Although Gibson is incarcerated at Nash CI, a number of his claims arise out of time he spent at Central Prison. For example, he alleges that Dr. Ramsey examined his shoulder and determined that it was in "bad shape," but provided no treatment other than scheduling him for an MRI. D.E. 5 at 6. Gibson claims that he later learned that he should have received a steroid injection for both his knee and his shoulder. *Id.*

Gibson also makes general allegations against Central Prison's medical staff. He claims that even though he underwent "MRI's, x-rays[,] and scans," the medical staff did not properly treat problems with his shoulder, knee, and ankle. D.E. 1 at 1. According to Gibson, another medical provider told him that Central Prison medical staff should have given him "stronger meds, shots, or surgery[,]" or at least therapeutic shoes to address his medical issues. *Id.* Although doctors recommended surgery, the surgery never took place. *Id.* Appointments with health care providers were cancelled without explanation. *Id.* at 2.

Even when Gibson received medications, there were issues. The medical staff gave him the wrong medication to deal with issues related to equilibrium, balance, stiffness, and muscle

spasms. His medications were changed so often that he felt like a "Guinea Pig[.]" *Id.* And the medications sometimes made him angry or caused him to have symptoms of serious conditions such as Parkinson's disease. *Id.* On other occasions, the Central Prison medical staff prescribed him "fake medicine a child would take." D.E. 5 at 8.

Gibson also alleges unconstitutional conduct on the part of Central Prison's correctional officers. He claims that Sergeant Elderdize, ordered other officers to choke him, jump on him, and kick him in the groin. *Id.* After he suffered this beating he was unable to walk and experienced pain while urinating. *Id.* Officers also broke his cane and lost his knee brace. D.E. 1 at 2. Despite his difficulty walking and the loss of his cane and knee brace, prison staff placed him in locations where he had to climb stairs to get around. *Id.*

The medical and correctional staffs at Nash CI, to hear Gibson tell it, are just as bad, if not worse, than their counterparts at Central Prison.

He alleges that Dr. Smith-Hunter took away a cane that he had been using since 2013 and refuses to prescribe him "good meds[.]" D.E. 5 at 6. Dr. Duvall changed Gibson's medications in an attempt to hurt him. D.E. 9 at 2. Nurse Rowley lied about Gibson; claimed he abuses narcotic medications; and, once she learned that he sued a prior medical provider, she refused to treat him, give him his medication, or refer him to another provider. D.E. 1 at 6; D.E. 5 at 7. Gibson also alleges Dr. Umessi retaliated against him for filing a lawsuit by refusing to prescribe medication strong enough to address his pain. D.E. 1 at 5.

Gibson also faults the Nash CI medical staff generally for failing to provide him with proper care for a variety of ailments, limiting the frequency of his medical examinations, confiscating his pain medication, doing a poor job of recordkeeping, and failing to assist Gibson with "my ADA." D.E. 4 at 6. Finally, Gibson claims the medical staff refused to provide him

with anything stronger than ibuprofen to address jaw, knee, and ankle pain resulting from a fall. *See, e.g.*, D.E. 5 at 8.

The correctional officers at Nash CI have also treated Gibson poorly. In response to Gibson walking slowly, Officer Wiggins activated a previously suspended sentence, netting Gibson additional time in prison. *Id.* at 6. Wiggins also took away Gibson's crutch, wheelchair, and arm sling, only returning them to him after he was placed in solitary confinement. *Id.*

He also claims that Sergeant Cooper retaliates against him in a variety of ways ever since they got into a fight. *Id.* at 7. Cooper investigates Gibson and lies about his conduct to extend Cooper's sentence. *Id.* Cooper's alleged lies resulted in Gibson's termination from his job. D.E. 9 at 1.

Gibson's Unit Manager, Defendant Sledge, also has it out for him. He tells his underlings to target Gibson and write him up and lock him up for anything possible. D.E. 5 at 7. These false charges extended Gibson's sentence and caused him unnecessary stress. *Id.*

Finally, Gibson takes issue with various actions of Nash CI correctional officers: denying him his wheelchair and crutch; submitting false disciplinary write-ups against him; subjecting him to unwarranted disciplinary treatment, including sending him "to the hole;" and a disciplinary process that finds inmates responsible without considering the evidence. *See generally* D.E. 4.

Liberally construing Gibson's allegations, he appears to allege the following claims: (1) Eighth Amendment claims of excessive force and deliberate indifference to serious medical needs and to conditions of confinement; (2) First Amendment retaliation claim; (3) Fourteenth Amendment due process challenges to disciplinary proceedings and grievance processes; and (4) violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq*.

4

The court will address each claim in turn.

## II. Screening Under the Prison Litigation Reform Act

The Prison Litigation Reform Act of 1996 ("PLRA") requires courts to review, before docketing, actions filed by prisoners against governmental entities or officials. 28 U.S.C. § 1915A(a). The purpose of this review is to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. The court must examine the pleadings, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Gibson's *pro se* status relaxes, but does not eliminate, the requirement that his complaint contain facially plausible claims. The court must liberally construe a *pro se* plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson* v. *BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

### A. Section § 1983 Claims.

Several of Gibson's claims arise out of 42 U.S.C. §1983, which creates civil liability for any person acting under the color of state law who deprives a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Thus, to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and

laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West* v. *Atkins*, 487 U.S. 42, 48 (1988); *Philips* v. *Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### B. Claims Against the State of North Carolina

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has explained that "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky* v. *Graham*, 473 U.S. 159, 171 n.14 (1985); *see Edelman* v. *Jordan*, 415 U.S. 651, 663 (1974). Absent waiver by the State or a valid congressional override, the Eleventh Amendment bars an action for damages in federal court against state agencies and other government entities that are characterized as "arm[s] of the State." *Regents of the Univ. of Cal.* v. *Doe*, 519 U.S. 425, 430 (1997) (quotation omitted). There is no indication of a waiver of abrogation of Eleventh Amendment immunity for § 1983 claims in this case, so Gibson's § 1983 claims against the State of North Carolina should be dismissed.

Even if the State of North Carolina was not entitled to Eleventh Amendment immunity, it is still entitled to dismissal because a state is not a "person" within the meaning of § 1983. *See West*, 487 U.S. 42; *see also*, *Wilson by Hinn* v. *North Carolina*, 981 F. Supp. 397 (E.D.N.C. 1997). Thus, the district court should dismiss Gibson's § 1983 claims against the State of North Carolina.

### C. Claims Against Central Prison and Nash Correctional Institute

Gibson names both Central Prison and Nash CI as defendants. A prison "is not a person amenable to suit" under § 1983. *Brooks* v. *Pembroke City Jail*, 722 F. Supp. 1294, 1301

(E.D.N.C. 1989); *see Kirkland* v. *Kershaw Corr. Inst.*, No. 0:08–80-HMH-BM, 2008 WL 784226, at *2 (D.S.C. Mar. 20, 2008) (stating "a prison facility[] and inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not 'persons' for purposes of a § 1983 lawsuit") (collecting cases). Therefore, the district court should dismiss Gibson's § 1983 claims against Central Prison and Nash CI.

### D. Section 1983 Official Capacity Claims

Gibson also names Central Prison and Nash CI staff members (i.e., agents of the North Carolina Department of Public Safety) in their official capacities. A plaintiff suing defendants in their official capacities for injunctive relief must allege that a policy or custom of the governmental entity the official works for was the moving force behind the violation. *See Hafer* v. *Melo*, 502 U.S. 21, 25 (1991); *Kentucky*, 473 U.S. at 166. That is, a plaintiff must "identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Hartmann* v. *Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citations omitted); *see City of Canton* v. *Harris*, 489 U.S. 378, 385, 391–92 (1989). Here, Gibson identifies no policy or custom within Central Prison or Nash CI that resulted in the violations Gibson allegedly suffered nor alleges that any of the individual defendants can provide the relief he seeks. Therefore, the district court should dismiss Gibson's claim for injunctive relief.

### E. First Amendment – Retaliation

Gibson alleges Dr. Umessi retaliated against him for filing a lawsuit by withholding narcotic pain medication.[1] Claims of retaliation are treated with skepticism in the prison context.

---

[1] On March 4, 2015, Gibson filed a complaint naming numerous defendants, including Dr. Umessi. S*ee Gibson* v. *Harrison*, No. 5:15-CT-3055. After conducting a frivolity review, Judge Louise Flanagan allowed Gibson's action to proceed against some of the defendants, including Dr. Umessi. *See* Order, *Gibson*, No. 5:15-CT-

*Cochran* v. *Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). To state a First Amendment retaliation claim, an inmate must allege "(1) his speech was protected, (2) the 'alleged retaliatory action adversely affected' his protected speech, and (3) a causal relationship between the protected speech and the retaliation." *Raub* v. *Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (quoting *Suarez Corp. Indus.* v. *McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000)).

Gibson's filing of a lawsuit against Umessi is protected First Amendment activity. *See Borough of Duryea* v. *Guarnieri*, 564 U.S. 379, 387 (2011) (stating "the Petition Clause [of the First Amendment] protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes"). Although Gibson fails to provide the date when Umessi prescribed ibuprofen in lieu of narcotic strength medication, in light of his *pro se* status the court will find that his allegations are sufficient to allow his retaliation claim to proceed.

### F. Eighth Amendment Claims

Gibson next claims that the Defendants violated his rights under the Eight Amendment to the Constitution. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, *Robinson* v. *California*, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley* v. *Albers*, 475 U.S. 312, 319 (1986). Gibson raises a number of different Eighth Amendment claims and the court will address each one individually.

#### 1. Deliberate Indifference to Medical Needs

The Eighth Amendment applies not only to the punishment imposed for a violation of

---

3055 D.E. 18 (E.D.N.C. October 23, 2015).

criminal law, but also to the conditions of confinement an offender faces while serving that sentence, including medical care. *See id.* To state a claim for constitutionally inadequate medical care, an inmate must establish an objective component, that the inmate had a serious medical need, and a subjective component, that the prison officials were deliberately indifferent to that need. *Iko* v. *Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A health condition qualifies as a serious medical need if it "is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Henderson* v. *Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective component is satisfied if an inmate alleges that a prison official "'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Id.* (quoting *Farmer* v. *Brennan*, 511 U.S. 825, 837 (1994)). This factor requires that the alleged wrongdoer had "actual knowledge of the risk of harm to the inmate" and "'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs." *Id.* (quoting *Parrish ex rel Lee* v. *Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)). Due to the Eighth Amendment's focus on eliminating the "unnecessary and wanton infliction of pain" on prisoners, allegations of negligence or medical malpractice are insufficient to establish a constitutional violation. *See Estelle* v. *Gamble*, 429 U.S. 97, 105–06 (1976).

Gibson's allegations about his medical care fail to state a claim for a violation of his constitutional rights because they do not establish either the subjective or objective component of an Eighth Amendment claim. Gibson – who describes himself as "physically and mentally challenged" – contends he suffers from a "messed up" shoulder, knee, and ankle and that his shoulder is in "bad shape." D.E. 1 at 4. These allegations vaguely state a medical need, but not a serious medical need. There is no indication that failure to treat Gibson's shoulder, knee, or ankle

9

could result in further significant injury or that these conditions significantly affect his daily activities. *See Chance* v. *Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (stating while such factors are "not the only ones that might be considered, [they] are without a doubt highly relevant to the inquiry into whether a given medical condition is a serious one").

Assuming that Gibson has a serious medical need, there are no factual allegations from which the court could reasonably infer that Defendants Ramsey, Smith-Hunter, Duvall, Rowley, and unnamed Central and Nash medical staff "acted with a sufficiently culpable state of mind." *Strickler* v. *Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Wilson* v. *Seiter*, 115 L. Ed. 2d 271, 279 (1991)). The pleadings show that Gibson received treatment for his ailments, but he disagrees with the treatment his providers chose for him.

Allegations of medical malpractice, negligence, or differences in medical judgment or opinion do not give rise to a constitutional claim. *Estelle*, 429 U.S. at 105–06; *Jackson* v. *Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). And prisoners are not entitled to choose their course of treatment. *See Wright* v. *Collins*, 766 F.2d 841, 849 (4th Cir. 1985). In sum, "disagreements over medications, diagnostic techniques . . . forms of treatment, or the need for specialists or the timing of their intervention . . . implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Sonds* v. *St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *accord Cochran* v. *Lindzau*, No. 5:15-CT-3138-BO, 2015 WL 9049810, at *2 (E.D.N.C. Dec. 16, 2015). The district court should dismiss this claim without prejudice.

### 2. Deliberate Indifference to Conditions of Confinement

Gibson attempts to bring a conditions of confinement claim against Defendants Wiggins and Smith-Hunter because they deprived him of access to his cane and wheelchair. To state an

Eighth Amendment "conditions of confinement" claim, a plaintiff must allege (1) a serious deprivation of a basic human need resulting in a serious physical or emotional injury, and (2) prison officials were deliberately indifferent to that need. *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994); *Strickler*, 989 F.2d at 1379.

Here, Gibson alleges the withholding of his wheelchair and cane caused him emotional distress. D.E. 1 at 4; D.E. 4 at 1. Gibson does not allege any facts, however, suggesting that Defendants Smith-Hunter or Wiggins knew of, but disregarded, a risk to Gibson's safety in prohibiting his use of a cane or wheelchair. The district court should dismiss this claim without prejudice.

### 3. Excessive Force

Gibson alleges that Elderdize directed his subordinates to beat Gibson, causing painful injuries. To state an excessive force claim, a plaintiff must allege (1) the prison official inflicted harm that "rises above the level of de minimus [sic]" (objective component) and (2) with "wantonness in the infliction of pain" – that is, with a malicious and sadistic purpose (subjective component). *Iko*, 535 F.3d at 238–39. In assessing whether a prison official acted with wantonness, the court considers such factors as (1) the need for the use of force, (2) the relationship between that need and the amount of force used, (3) the extent of injury inflicted, (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any efforts made to temper the severity of a forceful response." *Whitley* v. *Albers*, 475 U.S. 312, 321 (1986). Given the allegation that Elderdize beat him without any justification and caused him to suffer lasting injuries, Gibson states a cognizable claim of excessive force against Elderdize.

## G. Fourteenth Amendment – Procedural Due Process

### 1. False Disciplinary Charges

Gibson's allegations about false disciplinary charges being brought against him implicate the Fourteenth Amendment's Due Process Clause, which provides, in relevant part, that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law…." U.S. Const. amend. IV, § 1. To the extent Gibson challenges only the purportedly false disciplinary charges and findings, such claim must be dismissed. Falsely accusing an inmate of misconduct does not violate a right secured by the Constitution or laws of the United States. *See Cole* v. *Holloway*, 631 Fed. App'x 185, 186 (4th Cir. 2016) (stating "a false disciplinary charge cannot serve as the basis for a constitutional claim"); *Freeman* v. *Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding as long as certain procedural requirements are satisfied, allegations of false charges do not state a claim); *Sprouse* v. *Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (stating "claims based on the falsity of the charges and the impropriety of defendant's involvement in the grievance procedure, standing alone, do not state constitutional claims").

To state a Fourteenth Amendment due process claim, a plaintiff must allege that he (1) possesses a protected liberty or property interest and (2) was not afforded the appropriate level of process. *Id.* A protected liberty interest may arise either from the Due Process Clause itself, or from a statute, rule or regulation. *See Sandin* v. *Conner*, 515 U.S. 472, 477–79 (1995); *see also Henderson* v. *Simms*, 223 F.3d 267, 274 (4th Cir. 2000).

As to prisoners, "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin*, 515 U.S. at 480 (internal quotation omitted); *see Hewitt* v. *Helms*, 459 U.S. 460, 468 (1983) (stating "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence

imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight") (alteration omitted). State regulations can create a liberty interest only where a restraint imposes "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, not all disciplinary proceedings implicate a protected liberty interest.

Rather, a protected liberty interest arises when the proceeding imposes a punishment that (1) alters "the duration of [an inmate's] sentence," or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 487. In these situations, a prisoner is entitled to certain due process protections. These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff* v. *McDonnell*, 418 U.S. 539, 564–66 (1974).

At the outset, it is important to note that, a plaintiff cannot recover monetary damages or obtain injunctive relief for alleged constitutional violations when his recovery would imply the invalidity of an underlying conviction unless he can "prove that the conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck* v. *Humphrey*, 512 U.S. 477, 486–87 (1994); *see Mobley* v. *Tompkins*, 473 F. App'x 337, 337 (4th Cir. 2012). A finding that Gibson was deprived of due process protections during a disciplinary proceeding "would necessarily imply the invalidity of the resulting disciplinary conviction and penalties." *Mukuria* v. *Mullins*, No. 7:15-CV-451, 2015 WL 6958343, at *2 (W.D. Va. Nov. 10, 2015). Absent any allegations as to the status of any

purported convictions or penalties, Gibson's § 1983 due process claim for injunctive relief is barred under *Heck*. *See Wilkinson* v. *Dotson*, 544 U.S. 74, 81–82 (2005); *see, e.g.*, *Bernard* v. *Branker*, No. 5:10-CT-3164-D, 2011 WL 2748660, at *5 (E.D.N.C. July 14, 2011) (summarily dismissing § 1983 disciplinary conviction claim under § 1915A as *Heck* barred). This claim should be dismissed without prejudice.

### 2. Grievance Processes

Gibson also appears to challenge the handling of his grievances. *See* D.E. 1 at 4. To the extent Gibson asserts a claim that prison officials improperly handled his grievances, his claim should be dismissed. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker* v. *S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (explaining its ruling in *Adams* v. *Rice*, 40 F.3d 72, 75 (4th Cir. 1994)); *see Jasmaine* v. *Futrelle*, No. 5:15-CT-3294-FL, 2017 WL 829290, at *2 (E.D.N.C. Mar. 2, 2017) (stating an inmate "does not have a constitutional right to have available or to participate in an effective grievance process"); *George* v. *Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation."). Further, even if available, a prison grievance procedure does not confer any substantive right upon inmates. *Adams*, 40 F.3d at 75. Thus, the district court should dismiss this claim.

### H. ADA

Gibson's filings mention the ADA, although the exact nature of the claim is unclear. The ADA prohibits discrimination against disabled individuals. 42 U.S.C. § 12112(a); *see id.* § 12102(1)(A)-(C) (defining disabled). The ADA consists of Titles I-V and encompasses employment (Title I), public services (Title II), public accommodations (Title III),

telecommunications (Title IV), and retaliation (Title V). *See id.* §§ 12111–12213. The court considers Gibson's allegations under Title II and Title III as they are the titles that could potentially apply in the prison context.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." *Id.* § 12132; *see Pa. Dept. of Corr.* v. *Yeskey*, 524 U.S. 206, 210 (1998) (holding state prisons are public entities under Title II). To state a claim under Title II, a plaintiff must allege that he (1) has a disability, (2) is otherwise qualified for the benefit he claims to have been denied, and (3) was excluded from the benefit due to discrimination based on disability. *See Doe* v. *Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).

Gibson does not allege any facts to suggest he was deprived of a benefit to which he was otherwise entitled because of a disability. Thus, to the extent Gibson asserts an ADA claim arising under Title II, the district court should dismiss it without prejudice.[2]

Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of . . . any place of public accommodation by any person who owns, leases . . . , or operates a place of public accommodation." 42 U.S.C. § 12182(a). A "public accommodation" does not include a prison. *See id.* § 12181(7) (defining "public accommodation"); *see also White* v. *Secor, Inc.*, No. 7:10-CV-00428, 2010 WL 4630320, at *2 (W.D. Va. Nov. 5, 2010); *Hines* v. *GEO Grp., Inc.*, No. 5:08-CT-3056-D, 2008

---

[2] Title II does not provide for individual liability. *See Baird* v. *Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999); *see also* 42 U.S.C. § 12132 (providing a remedy only against a "public entity"). Congress abrogated Eleventh Amendment immunity in Title II of the ADA – at least to the extent a plaintiff states a claim for actual violations of rights guaranteed under the Fourteenth Amendment. *See United States* v. *Georgia*, 546 U.S. 151, 159 (2006) (providing a three-part test to determine whether Title II of the ADA abrogates a state's sovereign immunity").

WL 9015758, at *4 (E.D.N.C. Dec. 23, 2008). Thus, this claim should be dismissed with prejudice.

### III. Motion for Injunctive Relief

Gibson asks that the court order prison officials to (1) stop retaliating against him and (2) provide him a wheelchair. D.E. 4 at 1. A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To warrant a preliminary injunction, a movant must establish that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Winter* v. *Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Cantley* v. *W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201 (4th Cir. 2014). Gibson fails to demonstrate any of the requirements necessary to obtain injunctive relief. Thus, the district court should deny Gibson's request for injunctive relief.

### IV. Motion to Compel Discovery

Gibson requests videotapes from November 2016. D.E. 9 at 1. Defendants have not been served in this action and, as a result, are not yet required to participate in the discovery process. After the Defendants are served and appear in this case, the court will enter a scheduling order that will allow the parties to engage in discovery. Gibson will need to serve a discovery request that complies with the Rules of Civil Procedure on the Defendants, or, if represented, their attorney after the court files its scheduling order. Accordingly, Gibson's motion to compel is denied without prejudice as premature.

## V. Conclusion

For the reasons stated above, it is order that (1) Gibson's first motion to amend (D.E. 9) is ALLOWED, (2) Gibson's motion for discovery and injunctive relief (D.E. 4) is DENIED; and Gibson's First Amendment retaliation claim against Umessi in his individual capacity and his Eighth Amendment excessive force claim against Elderdize in his individual capacity are allowed to proceed.

As for the remainder of Gibson's claims, the undersigned recommends (1) the Eighth Amendment claims against Defendants Ramsey, Smith-Hunter, Duvall, Rowley and Wiggins in their official and individual capacities be dismissed without prejudice; (2) the Fourteenth Amendment Due Process claims be dismissed with prejudice; (3) the Title II ADA claim be dismissed without prejudice; (4) the Title III ADA claim be dismissed with prejudice and (5) all claims against the State of North Carolina, Central Prison, Nash CI, and Central and Nash Officials be dismissed with prejudice.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on plaintiff. Plaintiff shall have until 14 days after service of the Memorandum and Recommendation on plainitff to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, plaintiff will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: August 9, 2017

*/s/ Robert T. Numbers II*
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE